UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

___

Metropolitan Life Insurance Company,

                      Plaintiff,

   v.

Deborah Bell *et al.*,

                      Defendants.

**Report and Recommendation**

19-CV-1310 (LJV)

___

## I. INTRODUCTION

George Vick Bell Sr. was a retired automotive worker who died in 2018 with payable life insurance benefits totaling just under $60,000. When George's wife Deborah Bell filed a claim for his benefits, his daughters—defendants Ryanelle T. Fuqua[1] and Gina G. Bell—soon became entangled with Deborah in a dispute over which of several beneficiary designation forms was in effect. Facing the prospect of multiple litigation, plaintiff Metropolitan Life Insurance Company commenced this interpleader action under Rule 22 of the Federal Rules of Civil Procedure. Plaintiff named Deborah, Ryanelle, and Gina as interpleader defendants. Plaintiff further named Thomas T. Edwards Funeral Home, Inc. (the "Funeral Home") as a defendant because Deborah attempted to assign some of George's benefits to the Funeral Home to pay George's funeral expenses. All defendants have waived service but none of them has answered the complaint.

Plaintiff now makes a motion (Dkt. No. 12) for permission to deposit with the Court the entirety of George's benefits, plus any interest that has accrued, minus attorney fees and costs in the amount of $4,480. Plaintiff argues that it meets all the criteria for the relief requested, including its

___

[1] Ryanelle's first name is spelled incorrectly in the docket. (*See* Dkt. No. 10.) The Clerk of the Court is directed to conform the spelling to what appears in this writing.

status as a disinterested stakeholder; the presence of two or more adverse claimants; and the likelihood of multiple litigation.  Defendants declined to respond to the motion within the schedule that the Court set.

District Judge Lawrence J. Vilardo has referred this case to this Court under 28 U.S.C. § 636(b).  (Dkt. No. 11.)  The Court has deemed the motions submitted on papers under Rule 78(b).  For the reasons below, the Court respectfully recommends granting the motion.

## II.     BACKGROUND

This case concerns a family dispute over George's life-insurance proceeds.  George worked at General Motors ("GM") and participated in GM's Group Life and Disability Insurance Plan (the "Plan").  The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"),[2] and when George died on November 11, 2018, his total benefits under the Plan amounted to $59,081.99.  Per the Plan, George's benefits became payable upon his death.  Under the most recent beneficiary designation that George signed, dated April 27, 2016, his wife Deborah was the sole primary beneficiary.  (Dkt. No. 1-2.)  George's daughters Ryanelle and Gina each were 50 percent contingent beneficiaries.  (*Id.*)  On November 13, 2018, Deborah filed a claim for the benefits and assigned $4,679 of the benefits to the Funeral Home to pay for the services that it rendered.  (Dkt. Nos. 1-6, 1-7.)

The problem that led to this case is that the claim for benefits from the most recently designated primary beneficiary was not the end of the story.  On November 26, 2018, Gina wrote to plaintiff challenging the validity of the April 27, 2016 beneficiary designation.  (Dkt. No. 1-8.)  Though she did not refer specifically to one of these documents, Gina appeared to ask plaintiff to

---

[2] Codified as amended in 29 U.S.C. §§ 1001–1461 and scattered sections of 26 U.S.C.

deem either of two older beneficiary designations as controlling: a beneficiary designation dated March 9, 2016 showing her and Ryanelle as 25 percent primary beneficiaries (Dkt. No. 1-3); or a beneficiary designation dated October 14, 2011 showing her and Ryanelle as 50 percent coequal beneficiaries (Dkt. No. 1-4). Gina's letter prompted plaintiff to send a letter on December 17, 2018 to all three potential beneficiaries. (Dkt. No. 1-9.) In the letter, plaintiff asked Deborah, Gina, and Ryanelle to try to resolve their claims among themselves to avoid the possibility of multiple liability:

> Deborah Bell relies on the latest beneficiary designation on file with the Plan, dated April 27, 2016 that names her as the sole primary beneficiary. Gina G. Bell disputes this designation stating that George V. Bell passed away on November 11, 2018, and could no longer make decisions on his own due to his medical condition. She contends that [for] the designation completed on April 27, 2016, Mr. Bell was not competent and relies on the prior beneficiary designation on file, dated October 14, 2011, which names Gina G. Bell and Ryanelle T. Fuqua beneficiaries split equally.
>
> We cannot tell whether a court would find that the designation of April 27, 2016 was a valid designation. If a court determined that the beneficiary designation on file dated April 27, 2016 is valid, then the benefits would be payable solely to Deborah Bell. If a court was to find that the beneficiary designation on file dated April 27, 2016 is not valid, the benefits would be payable according to the prior valid designation on file dated October 14 2011, split equally to Gina G. Bell and Ryanelle T. Fuqua.

(*Id.* at 2–3.) In response, Ryanelle sent plaintiff a letter dated January 5, 2019 disputing Gina's reliance on older beneficiary designations. (Dkt. No. 11.) On March 4, 2019, plaintiff sent another letter to all three potential beneficiaries. (Dkt. No. 1-10.) In the letter, plaintiff acknowledged that the three potential beneficiaries could not reach an agreement. Plaintiff advised the three potential beneficiaries that it would proceed with an interpleader action.

Plaintiff filed its interpleader complaint on September 25, 2019, naming as defendants the three potential beneficiaries as well as the Funeral Home. (Dkt. No. 1.) In the complaint, plaintiff acknowledged that it owes George's benefits to someone but that it cannot determine whom. The Funeral Home waived service on October 1, 2019. (Dkt. No. 3.) Ryanelle followed with a waiver of

3

service on October 2, 2019.  (Dkt. No. 4.)  Deborah executed a waiver of service on October 6, 2019 (Dkt. No. 6), while Gina waived service on October 19, 2019 (Dkt. No. 8).  As of this writing, all three potential beneficiaries are *pro se*; Deborah and Ryanelle filed letters with the Court that they might have intended as their answers to the complaint.  (Dkt. Nos. 9, 10.)

Plaintiff filed its motion for interpleader deposit on January 30, 2020.  In its motion papers, plaintiff asserts that it has met all the criteria necessary for interpleader relief.  Plaintiff seeks permission to deposit the full sum of George's benefits, plus any accrued interest, minus attorney fees and costs in the amount of $4,480.  The Court set a schedule for any responses to the motion, but defendants filed no responses.

## III.  DISCUSSION

### A.  Interpleader Jurisdiction

As a preliminary matter, the Court has jurisdiction to resolve this case.  As stated in the complaint, plaintiff commenced this case under Rule 22.  In a rule interpleader case, a federal question implicating ERISA confers subject-matter jurisdiction by way of 28 U.S.C. § 1331 and 29 U.S.C. §§ 1132(a)(3)(B) and 1132(e)(1), regardless of whether complete diversity of citizenship exists among the parties.  *See Metro. Life Ins. Co. v. Bigelow*, 283 F.3d 436, 440 (2d Cir. 2002); *accord Metro. Life Ins. Co. v. Jacques*, No. 06-CV-444A, 2009 WL 6055839, at *5 (W.D.N.Y. Dec. 11, 2009).[3]  Since the Plan here is governed by ERISA, adjudicating proceeds from that plan constitutes a federal question and can proceed under Rule 22.  With respect to personal jurisdiction, three of the four defendants

---

[3] Although plaintiff has not invoked the statute, the Court would appear to have subject-matter jurisdiction under 28 U.S.C. § 1335 as well.  The record indicates that Gina is a citizen of Florida, which would suffice to establish the minimal diversity—diversity between two or more claimants—needed under statutory interpleader.  *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967).  The Court notes the likelihood of statutory interpleader jurisdiction for the sake of the record but will not address it further unless it becomes an issue later in the case.

4

reside in New York, and all four have filed waivers of service. The Court thus agrees with plaintiff that it has personal jurisdiction over all of the defendants under Rule 4(k)(1)(A) as well as under N.Y. CPLR §§ 301 and 302(a)(1).

### B. Deposit with the Court, Dismissal, and Costs

With jurisdiction confirmed, the Court will turn to plaintiff's requests. "Both rule and statutory interpleader are viewed as a 'remedial joinder device' originally designed to protect a stakeholder in an action—who is unsure as to which party has the right to relief or liability over a common fund—by joining absent parties or claimants, in the form of a counter or cross claim, into one single action." *6247 Atlas Corp. v. Marine Ins. Co.*, No. 2A/C, 155 F.R.D. 454, 461 (S.D.N.Y. 1994). "In this situation, the fund itself is the target of the claimants. It marks the outer limits of the controversy. It is, therefore, reasonable and sensible that interpleader, in discharge of its office to protect the fund, should also protect the stakeholder from vexatious and multiple litigation." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 534 (1967). "The three general requirements for the assertion of defensive interpleader are as follows: (1) the defendant 'stakeholder' must legitimately fear multiple litigation directed against the fund; (2) two or more of the claimants must be adverse to each other; and (3) the defendant must frame a defensive interpleader by way of a cross-claim or counterclaim." *6247 Atlas Corp.*, 155 F.R.D. at 462. Courts have discretion to permit deposit of a sum of money in an interpleader case by way of Rule 67. *See John v. Sotheby's, Inc.*, 141 F.R.D. 29, 33 (S.D.N.Y. 1992); *accord MWH Int'l, Inc. v. Inversora Murten S.A.*, No. 11 CIV. 2444 HB, 2012 WL 12886, at *3 (S.D.N.Y. Jan. 3, 2012) (conditioning dismissal on deposit of contested funds). "Attorney's fees and costs are generally awarded to a disinterested stakeholder who has expended time and money participating in a dispute not of his own making and the outcome of which has no impact on him." *Weininger v. Castro*, 462 F. Supp. 2d 457, 501 (S.D.N.Y. 2006) (internal

quotation marks and citations omitted). "The typical interpleader claim does not involve extensive or complicated litigation, and thus fees should be relatively modest." *Estate of Ellington v. EMI Music Publ'g*, 282 F. Supp. 2d 192, 194 (S.D.N.Y. 2003) (internal quotation marks and citations omitted).

Here, plaintiff has satisfied all the criteria for deposit and for an award of fees. The potential beneficiaries have made clear that they oppose each other's claims to George's benefits. Additionally, the Court intentionally omitted from this writing any detailed description of the contents of the potential beneficiaries' correspondence with plaintiff or with the Court; the contents indicate an unfortunate amount of discord between the potential beneficiaries and show that litigation of this case likely will be acrimonious. Multiple litigation is very likely under these circumstances. As for costs and fees, the amount that plaintiff requests is fairly modest considering the work required to prepare the complaint, to draft the pending motion, and to take the steps that were required to obtain waivers of service. *Cf. Landmark Chemicals, SA. v. Merrill Lynch & Co.*, 234 F.R.D. 62, 64 (S.D.N.Y. 2005) (collecting cases).

Accordingly, the Court recommends dismissing plaintiff from the case upon deposit with the Clerk of the Court a sum certain consisting of $59,081.99, plus accrued interest to be documented upon deposit, minus $4,480 in costs and fees.

### C. Further Proceedings by the Defendants

Upon adoption of this Report and Recommendation and dismissal of plaintiff, the Court will be left with an unusual scenario in which all remaining parties either have not yet appeared or are *pro se*. No action is necessary at this time, but the Court is putting the parties on notice that, upon adoption of this Report and Recommendation, it will ask them to explain their intentions with respect to obtaining representation or seeking *in forma pauperis* status.

## IV.  CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends granting plaintiff's motion for interpleader deposit and for costs and fees.  (Dkt. No. 12.)  Specifically, the Court's recommendation is as follows: Plaintiff will deposit with the Clerk of the Court a sum certain consisting of $59,081.99, plus accrued interest to be documented upon deposit, minus $4,480 in costs and fees.  Upon deposit, plaintiff would be dismissed from the case with prejudice.

## V.  OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for plaintiff by electronic filing on the date below.  Also on the date below, a hard copy of this Report and Recommendation will be mailed by first-class mail to each defendant at the addresses listed in the waivers of service.  "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Any objections must be filed electronically with the Clerk of the Court through the CM/ECF system.

"As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point."  *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted); *see also Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision.") (citation omitted).  "We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object.  The rule is enforced under our supervisory powers and is a nonjurisdictional waiver provision whose violation

7

we may excuse in the interest of justice." *United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38–39 (2d Cir. 1997) (internal quotation marks and citations omitted).

"Where a party only raises general objections, a district court need only satisfy itself there is no clear error on the face of the record. Indeed, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review. Such objections would reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 312–13 (S.D.N.Y. 2009) (internal quotation and editorial marks and citations omitted). "In addition, it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge." *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988) (citation omitted).

SO ORDERED.

　　　　　　　　　　　　　　　　__/s Hugh B. Scott_____
　　　　　　　　　　　　　　　　Hon. Hugh B. Scott
　　　　　　　　　　　　　　　　United States Magistrate Judge

DATED: May 20, 2020